Mr. Justice Hagner
delivered the opinion of the Court:
This case involves the construction of the seventy-third rule of this court.
The plaintiff sued the defendant on two promissory notes, one dated 13th December, 1887, for $360.10, payable sixty days after date, with interest at 8 per cent.; and the other dated 8th of March, 1888, for $21.38, payable thirty days after date, with interest at 6 per cent., each payable to the order of E. Brand, and endorsed by him in blank.
The declaration contains the proper averments;' and filed with it is the affidavit of the plaintiff which is quite sufficient under the provisions of the seventy-third rule. The plaintiff, by virtue of that rule, in view of these facts, became entitled to claim a judgment by default, unless it appeared, as provided by the rule, that the defendant had filed, “along with his plea, if in bar, an affidavit of defence, denying the right of the plaintiff as to the whole or some specified part of his claim, and specifically stating, also, in precise and distinct terms, the grounds of his defence, which wiould, if true, be sufficient to defeat the plaintiff’s claim in whole or in part.”
The defendant presented four pleas, accompanied by an affidavit;* and the question now is, whether these pleas and the affidavit were a sufficient gratification of the rule.
*90 This rule has been before the court in special term for construction scores of times, and it has been repeatedly before this court.
The pleas were:
First. Not indebted.
Second. Non assumpsit.
Third. That there was no valid consideration for the making and giving of the notes — and
“Fourth. And for a further plea, the said defendant says that the consideration mentioned as given, if any, was illegal, against public policy, and void; that said notes were given for gambling transactions in stocks, and not for bona fide purchases of stock, or otherwise; that no stocks were ever intended to be delivered to this defendant, under said transactions in stocks, and none were delivered to this defendant; but, that the consideration of which said notes was made, were wagers upon the differences in the rise and fall of stocks, and no- other or different consideration passed for *91 the giving o! said notes, and the plaintiff well knew at the time of the making of said notes by this defendant, what the consideration thereof was.”
The first inquiry is, whether the last plea presents a defence, which, if true, would defeat the plaintiff’s action.
Unquestionably it does. The statute of 9th Anne, Chap. 14, section 1, provides that all notes, bills, bonds, judgments, mortgages, or other securities or conveyances whatsoever, the consideration of which is money won at cards, or other games (describing many of them) “ shall be utterly void, frustrate and of none effect.”
In England this statute was held to invalidate such instruments in whose hands soever they might be, upon the ground that the words of the statute are peremptory: the instruments shall be “null and void, frustrate and of no effect.” It would, of course, defeat the whole statute if the mere trick of an assignment by the payee to a third party would have the effect of making them valid. They stand *92 precisely in the category of notes executed by infants, or by insane persons, or for some purpose forbidden by law. or against public policy; in whose hands soever they may be, they are void. 3 Kent Com., 79, 80.
This statute was in force in Maryland, at the cession, and is still in force in this District.
In the case of Gough vs. Pratt, Administrator of Kent, 9th Maryland, 533, the defendant had executed a note for a gaming debt, to Sollers, who assigned it to Kent, a bona fide purchaser without notice. Kent’s administrator brought suit against the maker of the note, but it was held invalid as against the maker, though in the hands of an innocent third party, without notice.
Appended to the opinion in that case is a learned judgment by Chief Justice Taney in the case of Thomas, trustee of Lloyd vs. Watson, in which the same point is considered, delivered in the Circuit Court of the United States in Baltimore.
In the case of Sardo vs. Fongeres, 3 Cranch C. C., 655, it was decided that money won at billiards in the District was within the purview of the statute.
This being the law as to gaming transactions in general, this court decided in the case of Justh vs. Holliday, 2 Mackey, 346, that just such practices as are described in the fourth plea (namely, the purchase by a broker of stocks on margins) were illicit, as within the inhibition of the statute. In that case the suit was against an endorser of a note given by Gen. Custer to settle a large sum alleged to be due for transactions on margins to a New York broker; and we held there could be no recovery. There can, therefore, be no doubt, that this defence was one which, if proved, would defeat the plaintiff’s action. But it is not sufficient, as we 'have seen, that the plea should present a sufficient defence. It must also be supported by a proper affidavit, in the mode required by the rule.
The rule was adopted after 1869, substantially in its present form. It may be as well to refer to a few of the cases *93 announcing the general principles governing its construction.
In Bank against Hitz, MacArthur & Mackey, page 198, Chief Justice Cartter thus narrates its history, the necessity for its enactment, and the propriety of its continuance:
“ This rule was adopted in this jurisdiction when we were overwhelmed with a great oppression of business. The calendar in the Circuit Court had run up to a thousand cases or thereabouts. Great delays in judgment occurred; creditors were postponed in their collections to an indefinite time. Defendants naturally resorted to the formal denials of pleading for the purpose of securing the time that the delays of the law gave them.
“We had precedents for this rule in the jurisprudence in nearly every State. The only doubt we entertained was as to our power to make it. It was matter of serious misgiving to some of the members of the court whether it was not a species of legislation, and whether it was not a denial of the citizen’s right under the Constitution. It certainly looked very much like the exercise of legislative rather than judicial power. But after mature deliberation, the court adopted it as a rule of practice, and as such it was very generally acquiesced in by the bar. Still, the court had some misgivings about it, until a case went up from here to the Supreme Court to make rules of practice. That court construed the power given by the organic act of this court favorably to the view we had; and now all doubt has been removed by the action of the Supreme Court in a recent case (Smoot vs. Rittenhouse), in which this rule has been upheld.
“ Such, briefly, is the history of this rule and its office. It is a rule to prevent vexatious delays in the maturing of a judgment where there is no defence, and at the same time to protect the rights of defendants in good faith contesting a claim, for both parties, plaintiffs and defendants, stand upon a common plane, and must be judged without presumption as equals — equals before the law and in their rights.
*94 “ Now, what does the rule mean, this being its office? It is couched in very plain language. It says the defendant shall set out 'his grounds of defence and swear to them. It does not mean a defence in all its details of incident and fact, but the foundation of the defence. That is all. Those grounds ought not to be vague and indefinite. They should have significance and meaning, and should impress the idea of defence upon the court to which they are addressed. It was never contemplated that this rule required a party to follow his case through all the lights- and shadows' of the evidence in it. That would be to hold it essential that he should try his case in his plea. If that were done, what should we have here? Why, discussion as to the consistency of a witness’ story, whether one witness did not contradict another, that the import of an irrelevant fact was one way or the other, and the like. The court, to ascertain whether he had stated the grounds of his defence, would be called upon to weigh and analyze testimony. And the moment we attempt to ascertain from a mass of testimony the resultant facts, we have got before us as large a case as the case itself could be on trial before a jury. A discussion that reviews all the facts and forces that enter into a verdict is not for the court to undertake before it will allow issues to be made up for a jury.”
In Connick vs. Morrison, 4th Mackey, 497, the court held that an affidavit of defence under the 73 d rule is insufficient when it amounts to no more than a change in terms of the plea and does not state any specific defence or give specific warning to the plaintiff of what the defendant means to rely upon for the purpose of defeating the claim.
And in Kennedy vs. Barker, MacArthur & Mackey, 340, where it was insisted the affidavit to the plaintiff’s declaration was insufficient, the court said:
“ The affidavit is involved and inartificial, and while it deserves unfavorable criticism in point of form, we think, upon examination, that it is in substantial compliance with the rule.”
*95 It appears then that all that is needed to secure a jury-trial to the defendant is that he should, in intelligible terms, sufficiently apprise the plaintiff that he disputes the particular claim sued on, and disclose the grounds of defence he intends to rely on, which must be such as would, if true, be sufficient to defeat the action.
Applying these common sense principles to the construction of the rule, we come to an examination of the affidavit of the defendant.
There can be no.doubt the affidavit, in plain terms, denounces the entire original dealings between the defendant and Havener & Company, as gaming transactions. The defendant states he was dealing with Havener & Company, in the business of buying and selling on- margins; that Brand, the payee of the note, was agent for the firm, and it was the express and positive agreement between Brand, Havener & Co. and himself, that no stocks were to be purchased by them .for him, nor delivered to him nor to any one for him, and none were ever delivered to him, because he was only operating under a wagering contract, upon the differences in the rise and fall of the stocks alone; that about December 20, 1886, the firm claimed they had put -up margains for him to the amount of $850 and lost it all in the fall of stocks, and demanded that sum of him in settlement; that the firm never rendered him any account current of the transactions, to show the losses and profits for which they claimed; that he believed at that time and believes now that he never owed the sum claimed by them; that Brand, “who made the deal,” called upon him with regard to settling for the sum of $850; but he declined at first to entertain the matter, saying he did not owe it: but finally Brand said if he would give notes for the amount he would never have to pay them; that under these circumstances, 'he made two notes for said sum, payable in 60 and 90 days to the order of Brand, who endorsed them and handed them to Havener & Company; when the notes became due he refused to pay any part of them, insisting he did not owe *96 them, as they were given without any consideration, as they knew. At Brand’s persuasion, however, he again renewed' the notes by making others for less amounts, to the order of Brand.
It thus sufficiently appears from the affidayit that the notes sued on are the outcome of the original balance of $850; so there is no question that he asserts the illicitness of the entire transaction and relies on its illegality as a reason why there should be no recovery against him on the notes sued on.
If the affidavit had stopped here, there could have been no controversy as to its sufficiency, for it would have given the plaintiff a perfectly intelligible statement that the defendant denied the validity of either note upon the grounds indicated.
The alleged obscurity or want of clearness is supposed to appear when he undertakes a more particular description of the circumstances under which the notes sued on were given.
There is certainly a lack of clearness in the statement, that the note of the 13th of August, 1887, for $350 at sixty days, bearing 8 per cent., was renewed by another note “ for a less amounts.” This, the plaintiff claims, describes only one note, namely, that for $360.10 sued on. But that note is not for a less amount than the $350 note; and it is insisted the use of the article “a” shows the renewal spoken of was of one note only and not of both. But if the word “a” should be omitted the confusion would disappear, and the sentence would then equally embrace both notes.
It is needless, however, to go into an examination of these, criticisms, in view of the fact, that the whole dealing, in general terms, was denounced as a gambling transaction in all its aspects, in the first part of the affidavit; even if the particular and unnecessary description of the notes has, by the use of redundant words, created a confusion that otherwise would not have existed.
The only effect of adopting these criticisms would be to *97 condemn the particular statements as of doubtful meaning; but not as exhibiting such inconsistency with the plain general averments of the affidavit as to leave any doubt in the mind of the plaintiff that the defendant intended to dispute the validity of both notes as the result of a gaming transaction.
As all that results from a reversal of the judgment is to send the parties to a jury, where justice would be done between them, we think we should accept the plain general statement, and reject any supposed blunders as to particulars, as unimportant.

The ruling of the court below is reversed, and the case remanded.

 Defendant’s Affidavit. District of Columbia, to wit: John W. Morgan being duly sworn, deposes and says that he is the defendant in the above entitled cause, and that he knows the plaintiff; that in October and November, 1886, Charles T. Havener and William H. Barnes, under the firm name of C. T. Havener & Co., were engaged in business in the City of Washington, District of Columbia, as stock brokers exclusively. Mr. E. Brand, the payee in the notes sued on in the above entitled action, was acting as the dealer in the transactions of stocks on margins for me, with the firm of said Havener & Co. at a margin of one per cent. It was the express and positive agreement between said Brand, Havener & Co., and myself that no stocks were to be purchased by them for me, and none were to be delivered to me nor to any one for me, and none were ever delivered to me. It was the intention and understanding that no stocks would or should be delivered to me at any time, because I was operating under a wagering contract, that is upon the differences in the rise and fall of the stocks alone. About December 20, 1886, said firm claimed that they had put up margins for me to the amount of $850, *90 and lost it all in the fall of stocks and demanded that sum of me in consequence thereof. Said firm never rendered me any account current of their marginal transactions, to see the losses and profits for which they claimed. I believed at that time and I believe now, that I never owed them said sum claimed by them. Mr. Brand who made the “deals,” and on behalf of Havener & Co., called to see me in regard to paying said firm the sum claimed. I declined at first to entertain the matter, saying I did not owe it. But, finally, Mr. Brand said if I would give notes for said amount, that I would never have to pay them. Then, under such circumstances, I made two notes for said sum, payable in 60 and go days, to the order of said Brand, and he endorsed them and handed them to Havener & Co. When the notes became due, I refused to pay them, or any part of them, saying I did not owe them, as the notes were given without any consideration and they knew it. Mr. Brand, however, said he would pay a curtail on said notes himself. I again renewed the notes by making other notes for a less amounts, to the order of said Brand. One of said renewals is the note sued on in this suit. The note for which-the note in question is a renewal is dated August 13, 1887, for $350, payable in 60 days, at 8 per cent, interest, to the order of said Brand, and was by him endorsed and given to said Barnes, and by said Barnes endorsed. When this last mentioned note became due said Barnes called to see me with reference to its payment, saying that he was the owner and holder of said note. I became very indignant telling him I did not owe it and would not pay it, as he Icnew there never was any consideration given for the making of said note. However, in a talk between Barnes, Brand, and myself, Brand, *91 again on his own part and not on my behalf, paid some curtailment on said note when I again made another note in renewal for that note, and for a less sum, to the order of said Brand; he put his name on the back of said note, and delivered the note to said Barnes. The note was made and delivered for Havener & Co., and for no one else. I heard nothing more of or about said note until it became due, when the plaintiff called to see me to know if I was going to pay the note. I at once told him I would not pay it, as the note was without consideration, and all the parties knew it, and that Barnes, who was representing him knew that no consideration ever was given for the making of the note. The plaintiff was a frequenter of Havener & Co.’s place of business, as I had often seen him there, and from his acts, conduct and secrecy with Havener, a member of said firm, I formed the opinion that his business there was private and confidential with the firm. From the secrecy manifested by said plaintiff in transacting his business with the firm, I believe and aver that the note sued on was simply placed into the hands of the plaintiff for the purpose of bringing this suit against me, and that he was not at the time this suit was brought either the owner or holder of said note. I attach hereto the affidavit of Edmund Brand, and make the same a part of this my affidavit.
John W. Morgan.
Subscribed and sworn to before me this 8th day of September, A. D: 1888.
[SEAL] S. A. Terry,

Notary Public.